# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES LOWELL KENTZ, | CV F 06-0166 AWI SMS HC |
| Petitioner, | FINDINGS AND RECOMMENDATION REGARDING PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| JEFF WRIGLEY, | [Doc. 1] |
| Respondent. | |

Petitioner is a federal prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]

BACKGROUND

After a jury trial, Petitioner was convicted in the United States District Court for the Central District of California of 21 counts of mail fraud. He was sentenced to 150 months incarceration for the mail fraud and 10 months consecutive incarceration for committing mail fraud while on pretrial release. Petitioner was also sentenced to three years of supervised release and ordered to pay $587,053.23 in restitution.

Petitioner appealed his conviction; however, the Ninth Circuit affirmed his sentence on June 1, 2001. Petitioner was subsequently assigned to the Taft Correctional Institution to serve

---

[1] Respondent submits that effective April 15, 2006, the new Warden at Taft Correctional Institute is Jeff Wrigley. Former Warden Bernie Ellis has been transferred to a facility in Arizona. Therefore, pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Warden Wrigley is substituted in place of Former Warden Bernie Ellis.

1

his sentence.

On August 19, 2005, a search was conducted of Petitioner's property. Legal work performed by Petitioner for other inmates was found in his possession. Petitioner was charged with a violation of Code 305 of the Code of Federal Regulations ("CFR") 543.11 because the prohibited materials were in his personal property.

Petitioner appeared at the disciplinary hearing and was found guilty as charged. (Exhibit C, attached to Petition.) Petitioner contests the outcome of a disciplinary hearing in which Petitioner was found to have committed the prohibited act of possession of anything not authorized for retention. (Id.) As a result, Petitioner lost thirteen (13) days of good conduct time and fifteen (15) days of disciplinary segregation.

Petitioner claims his disciplinary record must be expunged and his time credits restored because the Bureau of Prisons improperly found him guilty as charged, and even if he is guilty as charged, he was cited improperly under Code 305.

Petitioner filed the instant petition for writ of habeas corpus on February 15, 2006. (Court Doc. 1.)[2] On January 12, 2007, Respondent filed an answer to the petition, and Petitioner filed a traverse on January 23, 2007. (Court Docs. 18, 21.)

## DISCUSSION

A.   Standard of Review

Writ of habeas corpus relief extends to a person in custody under the authority of the United States. See 28 U.S.C. § 2241. Writ of habeas corpus relief is available if a federal prisoner can show he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Petitioner's claims are proper under 28 U.S.C. § 2241 and not 28 U.S.C. § 2255 because they concern the manner, location, or conditions of the execution of petitioner's sentence and not the fact of petitioner's conviction or sentence. Tucker

---

[2] On March 1, 2006, the Court directed Respondent to submit a response to the petition. (Court Doc. 6.) On May 9, 2006, Respondent filed a motion to dismiss the petition. (Court Doc. 8.) Petitioner filed an opposition on May 18, 2006. (Court Doc. 9.) On November 22, 2006, the Court struck Respondent's motion to dismiss as deficient and directed Respondent to file an answer addressing the merits of the petition. (Court Doc. 16.)

2

v. Carlson, 925 F.2d 330, 331 (9th Cir.1990) (stating that a challenge to the execution of a sentence is "maintainable only in a petition for habeas corpus filed pursuant to 28 U.S.C. § 2241"); Montano-Figueroa v. Crabtree, 162 F.3d 548, 549 (9th Cir.1998) (*per curiam*) (allowing a federal prisoner to use § 2241 to challenge the BOP's restitution policies).

Further, because Petitioner is challenging the execution of his sentence at Taft Correctional Institution and Taft is within the Eastern District of California, Fresno Division, the Court has jurisdiction over this petition. See Brown v. United States, 610 F.2d 672, 677 (9th Cir. 1990).

B.   Exhaustion of Administrative Remedies

A petitioner who is in federal custody and wishes to seek habeas relief pursuant to 28 U.S.C. § 2241 must first exhaust available administrative and judicial remedies. Brown v. Rison, 895 F.2d 533, 535 (9th Cir.1990); Chua Han Mow v. United States, 730 F.2d 1308, 1313 (9th Cir.1984).  It is only after a petitioner has fully exhausted his administrative remedies that he becomes entitled to present his claims to the federal court. See United States v. Mathis, 689 F.2d 1364, 1365 (11th Cir.1982).  In Ruviwat v. Smith, 701 F.2d 844, 845 (9th Cir.1983) (per curiam), the Ninth Circuit explained why a petitioner must first exhaust his administrative remedies before filing for habeas relief: "The requirement of exhaustion of remedies will aid judicial review by allowing the appropriate development of a factual record in an expert forum; conserve the court's time because of the possibility that the relief applied for may be granted at the administrative level; and allow the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings. See also Chua Hah Mow, 730 F.2d at 1313.

However, the exhaustion requirement was judicially created; it is not a statutory requirement. Chua Han Mow , 730 F.2d at 1313; Montgomery v. Rumsfeld, 572 F.2d 250, 252 (9th Cir.1978). Because exhaustion is not required by statute, it is not jurisdictional. Morrison-Knudsen Co., Inc. v. CHG Int'l, Inc., 811 F.2d 1209, 1223 (9th Cir.1987), *cert. dismissed*, 488 U.S. 935 (1988); Montgomery, 572 F.2d at 252.  "Where exhaustion of administrative remedies is not jurisdictional, the district court must determine whether to excuse the faulty exhaustion and

3

reach the merits, or require the petitioner to exhaust his administrative remedies before proceeding in court." Brown, 895 F.2d at 535.

The Bureau of Prisons has established an administrative remedy procedure governing prisoner complaints. The procedure is set forth at 28 C.F.R. § 542.10 et. seq.  First, an inmate must attempt to resolve the issue informally by presenting it to staff before submitting a Request for Administrative Remedy.  28 C.F.R. § 542.13 (1999).  If dissatisfied with the response, the prisoner may proceed with the formal filing of an Administrative Remedy Request.  28 C.F.R. § 542.14 (1999).  Upon denial by the institution, the prisoner may appeal the decision by filing a complaint with the Regional Director of the Bureau of Prisons.  28 C.F.R. § 542.15 (1999).  The Regional Director's decision may be appealed to the General Counsel in Washington, D.C.  Id.  Appeal to the General Counsel is the final step in the administrative remedy process. Id.

Respondent concedes that Petitioner has exhausted the administrative remedies.

C.      Some Evidence Supports The Disciplinary Infraction

Prisoners cannot be entirely deprived of their constitutional rights, but their rights may be diminished by the needs and objectives of the institutional environment. Wolff v. McDonnell, 418 U.S. 539, 555 (1974).  Prison disciplinary proceedings are not part of a criminal prosecution, so a prisoner is not afforded the full panoply of rights in such proceedings.  Id. at 556.  Thus, a prisoner's due process rights are moderated by the "legitimate institutional needs" of a prison. Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989), *citing* Superintendent, etc. v. Hill, 472 U.S. 445, 454-455 (1984).

However, when a prison disciplinary proceeding may result in the loss of good time credits, due process requires that the prisoner receive: (1) advance written notice of at least 24 hours of the disciplinary charges; (2) an opportunity, when consistent with institutional safety and correctional goals, to call witnesses and present documentary evidence in his defense; and (3) a written statement by the factfinder of the evidence relied on and the reasons for the disciplinary action. Hill, 472 U.S. at 454; Wolff, 418 U.S. at 563-567.  In addition, due process requires that the decision be supported by "some evidence." Hill, 472 U.S. at 455, *citing* United States ex rel. Vatauer v. Commissioner of Immigration, 273 U.S. 103, 106 (1927).

4

A decision to revoke an inmate's good-time credit does not comport with minimum procedural due process requirements unless its underlying findings are supported by "some evidence." Superintendent v. Hill, 472 U.S. 445, 454 (1985). The Supreme Court has held that "ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455-56. The Ninth Circuit has further held that there must be "some indicia of reliability of the information that forms the basis for prison disciplinary actions." Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987) (uncorroborated hearsay statement of confidential informant with no firsthand knowledge is not enough evidence to meet Hill standard.)

With regard to the procedural protections outlined in Hill, it appears that Petitioner received all that was due to him. Specifically, on August 20, 2005, Petitioner was given advance notice of the hearing by Officer Grantham; he was given the opportunity to present argument and documentation in support of his defense; and, on October 10, 2005, he was provided a written decision by the factfinder explaining the reason for the finding. (See Exhibit F, at 1-3.)

As Respondent submits, Title 28 of the Code of Federal Regulations, section 541.13, specifies the prohibited acts and sets forth a disciplinary severity scale for federal inmates such as Petitioner.

Section 541.13 designates four (4) level of severity of prohibited acts by inmates as follows:

> (a) There are four categories of prohibited acts - - Greatest, High, Moderate, and Low Moderate (see Table 3 for identification of the prohibited acts within each category). Specific sanctions are authorized for each category (see Table 4 for a discussion of each sanction). Imposition of a sanction requires that the inmate first is found to have committed a prohibited act.

Table 3 to Section 541.13 is entitled, "Prohibited Acts and Disciplinary Severity Scale." The 300 codes are identified as the Moderate Category offenses. Code 305 of the Prohibited Acts pertains to the "Possession of anything not authorized for retention or receipt by the inmate, and not issued to him through regular channels."

1    Title 28 of the Code of Federal Regulations, section 543.11 provides in pertinent part the
2 following:

3    (a) The Warden shall make materials in the inmate law library available whenever practical, including evening and weekend hours.  The Warden shall allow an inmate a reasonable amount of time, ordinarily during the inmate's leisure time (that is, when the inmate is not participating in a scheduled program or work assignment), to do legal research and to prepare legal documents.  Where practical, the Warden shall allow preparation of documents in living quarters during an inmate's leisure time.
   (b) The Warden shall periodically ensure that materials in each inmate law library are kept intact and that lost or damaged materials are replaced.
   (c) Staff shall advise an inmate of rules and local procedures governing use of the inmate law library.  Unauthorized possession of library materials by an inmate constitutes a prohibited act, generally warranting disciplinary action (see part 541 of this chapter).
   (d) **An inmate's legal materials include but are not limited to the inmate's pleadings and documents (such as a presentence report) that have been filed in court or with another judicial or administrative body, drafts of pleadings to be submitted by the inmate to a court or with other judicial or administrative body which contain the inmate's name and/or case caption prominently displayed on the first page, documents pertaining to an inmate's administrative case, photocopies of legal reference materials, and legal reference materials which are not available in the institution main law library (or basic law library in a satellite camp).**
   (1) An inmate may solicit or purchase legal materials from outside the institution.  The inmate may receive the legal materials in accordance with the provisions on incoming publications or correspondence (see 28 CFR part 540, subparts B and F) or through an authorized attorney visit from a retained attorney.  The legal materials are subject to inspection and may be read or copied unless they are received through an authorized attorney visit from a retained attorney or are properly sent as special mail (for example, mail from a court or from an attorney), in which case they may be inspected for contraband or for the purpose of verifying that the mail qualifies as special mail.
   (2) Staff may allow an inmate to possess those legal materials which are necessary for the inmate's own legal actions.  Staff may also allow an inmate to possess the legal materials of another inmate subject to the limitations of paragraph (f)(2) of this section.  **The Warden may limit the amount of legal materials an inmate may accumulate for security or housekeeping reasons**.
   (e) An inmate is responsible for submitting his documents to court.  Institution staff who are authorized to administer oaths shall be available to provide necessary witnessing of these documents, as requested by inmates and at times scheduled by staff.
   (f)(1) Except as provided for in paragraph (f)(4) of this section, an inmate may assist another inmate in the same institution during his or her leisure time (as defined in paragraph (a) of this section) with legal research and the preparation of legal documents for submission to a court or other judicial body.
   (2) **Except as provided for in paragraph (f)(4) of this section, an inmate may possess another inmate's legal materials while assisting the other inmate in the institution's main law library and in another location if the Warden so designates**.
   (i) **The assisting inmate may not remove another inmate's legal materials, including copies of the legal materials, from the law library or other designated location.  An assisting inmate is permitted to make**

6

> **handwritten notes and to remove those notes from the library or other designated location <u>if the notes do not contain</u> a case caption or document title or the <u>name(s) of any inmate(s)</u>. The assisting inmate may also develop and possess handwritten drafts of pleadings so long as the draft pleadings do not contain a case caption or document title or the name(s) of any inmates. These notes and drafts are not considered to be the assisting inmate's legal property, and when the assisting inmate has these documents outside the law library or other designated location, they are subject to the property limitations in § 553.11(a) of this chapter**.
> 　　　　(ii) **<u>Although the inmate being assisted need not remain present in the law library or other designated location while the assistance is being rendered, that inmate is responsible for providing and retrieving his or her legal materials from the library or other designated location</u>**. Ordinarily, the inmate must provide and retrieve his or her legal materials during his or her leisure time. An inmate with an imminent court deadline may request a brief absence from a scheduled program or work assignment in order to provide or retrieve legal materials from an assisting inmate. (Emphasis added in bold.)

Title 28 of the Code of Federal Regulations, section 553.11, subdivision (d) states:

> 　　　　(d) Legal materials. Staff may allow an inmate to possess legal materials in accordance with the provisions on inmate legal activities (see § 543.11 of this chapter). . . ."

On August 19, 2005, a search was conducted by correctional counselor Strickland of Petitioner's property located inside his cell. During the search the counselor discovered legal work for several different inmates in Petitioner's possession. As a result, Petitioner was charged with a violation of Code 305 of the Code of Federal Regulations ("CFR"). (Exhibit A, attached to Answer.)

Petitioner was informed of the violations on August 23, 2005, and received notification of his rights at the disciplinary hearing. (Exhibits B & C, attached to Answer.)

On September 22, 2005, Petitioner voiced no objection to proceeding with the disciplinary hearing without a staff representative. (Exhibit D, attached to Answer.) The disciplinary hearing was conducted on September 27, 2005. At the hearing, the Disciplinary Hearing Officer ("DHO") considered the following evidence prior to rendering his finding: (a) the Incident Report of counselor Strickland; (b) the Memorandum of case manager Maurseth, which provides the names of twenty-five (25) inmates that appeared on the legal work found in Petitioner's property; (c) the Additional Factors To Consider Regarding The Incident Report signed by Petitioner, dated August 26, 2005; and (d) the testimony of Petitioner. (Exhibit F,

7

attached to Answer.)

After considering all the evidence, the DHO found that the greater weight of the evidence supported the finding that Petitioner committed the prohibited act of possession of anything not authorized in violation of Code 305. (Id. at 3.) In reaching this finding, the DHO pointed out that Petitioner was found guilty of committing the prohibited act of Code 305-possession of anything not authorized, and not for Code 400-possession of property belonging to another person, because Petitioner claimed ownership of the paperwork. (Id. at 2.) Specifically, in his written statement, Petitioner acknowledged the items were "personal reference copies of self authored typewritten legal pleading for other inmates. . ."[3] (Id. at 3.) There is "some evidence" to support the DHO's finding. As pointed out by the DHO, Petitioner admitted that the property belonged to and was written on behalf of other inmates. The case manager listed all of the twenty-one (21) current and four (4) former inmate's names that were found on the property seized from Petitioner's cell. Petitioner is not authorized to retain legal materials containing the names of other inmates in his cell. As explained in the declaration of the DHO, Curtis Logan, TCI policy Number 13.003, entitled "Personal Property, Inmate", contained in the TCI Policy and Procedure Manual, provides institution guidelines concerning inmate personal property, to define contraband and to establish specific disposal standards for excess and/or confiscated personal property at the Taft Correctional Institution." Section A, "Identification and Limitation of Personal Property" specifies that "Inmates may not possess legal materials belonging to another inmate." (See Exhibit I, at pp.1-2, attached to Answer.) This policy was in effect at the time of Petitioner's violation on August 19, 2005. By possessing the legal documents prepared for other inmates, Petitioner violated prison policy and section 543.11, and "some evidence" supports the DHO's finding.

Petitioner claims that the documents found in his cell were legal documents prepared by himself for other inmates. (Traverse, at 2.) Petitioner cites to section 543.11, subdivision (d),

---

[3] This admission and finding dispels Petitioner's claim, in the alternative, that he should have been charged with a violation of "Possession of [Authorized] Property Belonging to Another Person," in violation of Code 400. (Traverse, at 5.)

and argues that in order for a document to be considered "legal material," it must "contain the inmate's name and/or case caption prominently displayed on the front page." Petitioner contends that the evidence did not establish that the reference materials found in his cell contained the inmate's names and/or case captions on the front page. Petitioner's argument is based on a misunderstanding of the subdivision (d). Subdivision (d) merely provides a nonexclusive list of what may legitimately constitute authorized possession of "legal material." It does not define the parameters surrounding possession of another inmate's property. Section 543.11, subdivision (f)(2), clearly states, "[e]xcept as provided for in paragraph (f)(4) of this section, an inmate may possess another inmate's legal materials while assisting the other inmate in the institution's main law library and in another location if the Warden so designates." Subsection (i) states, "[t]he assisting inmate may not remove another inmate's legal materials, including copies of the legal materials, from the law library or other designated location. An assisting inmate is permitted to make handwritten notes and to remove those notes from the library or other designated location if the notes do not contain a case caption or document title or the name(s) of any inmate(s)."

In the instant case, the legal property found in Petitioner's cell contained the names of twenty-one (21) current inmates at TCI and four (4) former inmates, and these names were listed in the memorandum authored by case manager Maurseth. (See Exhibit E.) At the disciplinary hearing, as now, Petitioner contends he retained the documents as reference copies of arguments he wrote for other inmates, as well as the corresponding court orders. However, this fact does not render the possession of the materials to be authorized. As just stated above, an inmate may **only** possess another inmate's legal materials while **assisting the other inmate in the institution's main law library**. . . ." In addition, although an inmate is authorized to retain handwritten notes outside of the law library, this is only authorized if the documents do not **contain** "the name(s) of any inmate(s)." Code Fed. Regs. tit 28, § 543.11(f)(2)(i). As "some evidence" supports the DHO's finding of guilt, the instant petition must be denied.

## RECOMMENDATION

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. The instant petition for writ of habeas corpus be DENIED; and

2.        The Clerk of Court be directed to enter judgment in favor of Respondent.

This Findings and Recommendation is submitted to the assigned United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Replies to the objections shall be served and filed within ten (10) <u>court</u> days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    January 18, 2008**                             /s/ Sandra M. Snyder
                                                                              UNITED STATES MAGISTRATE JUDGE